**LEAGUE CENTRAL CREDIT UNION,
Plaintiff-Appellant,**

v.

**Thomas C. MOTTERN, Commissioner of Banking, State of Tennessee, and American Sunbelt Credit Union, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 25, 1983.

Permission to Appeal Denied by
Supreme Court Nov. 28, 1983.

Stuart E. Duncan, Duncan & Morton, Chattanooga, Joseph S. Reeves, III, Broemel & Reeves, Nashville, for plaintiff-appellant.

Kate Eyler, Asst. Atty. Gen., Nashville, for defendant-appellee Thomas C. Mottern, Commissioner of Banking, State of Tenn.; William M. Leech, Jr., Atty. Gen. & Reporter State of Tenn., of counsel.

Davis H. Carr, John E. Murdock, III, Boult, Cummings, Conners & Berry, Nashville, for defendant-appellee American Sunbelt Credit Union.

## OPINION

CONNER, Judge.

This dispute involves an existing "central credit union,"[1] a new "credit union" (both created pursuant to T.C.A. § 45–4–101, et seq.) and the then Tennessee Commissioner of Banking (now the Commissioner of Financial Institutions) charged with approving the charters of both "central credit unions" and "credit unions" and thereafter regulating them.

Plaintiff-appellant, League Central Credit Union, sued the defendants-appellees, American Sunbelt Credit Union, and the commissioner,[2] challenging the action of the commissioner in approving the charter and by-laws of American Sunbelt as a credit union because there was no "common bond" as required by T.C.A. § 45–4–301, *infra.* The suit was brought under alternative theories of relief, either for declaratory judgment pursuant to T.C.A. § 29–14–101, et seq., or for a writ of certiorari pursuant to T.C.A. § 27–9–101, et seq., as directed in T.C.A. § 45–1–108, *infra.* The latter statute provides for judicial review of orders of the commissioner under certain conditions. Both defendants tested the sufficiency of the complaint, as amended, by filing motions to dismiss pursuant to T.R.C.P. 12.-02(6) for lack of standing and the failure of plaintiff to exhaust its administrative remedies. The chancellor granted the respective motions to dismiss and denied plaintiff's

---

1. Under the Tennessee statutory scheme, T.C.A. § 45–4–101, et seq. a "central credit union" is essentially a credit union formed to service other credit unions, persons affiliated with that industry and groups too small to be eligible for "credit union" status. *See* T.C.A. §§ 45–4–101(c), (d).

2. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

motion to alter that judgment. League Central appeals contending that it indeed has standing and that it was unnecessary to exhaust its administrative remedies. We believe the standing question is dispositive and . accordingly will deal solely with it.

■ A T.R.C.P. 12.02(6) motion to dismiss admits the truth of all relevant and material averments contained in a complaint, *Garrison v. Graybeel,* 202 Tenn. 567, 308 S.W.2d 375 (1957), but asserts that such facts do not constitute a cause of action. *Henderson v. Lawrence,* 212 Tenn. 247, 369 S.W.2d 553 (1963). We therefore review the allegations as well as the relevant statutory framework with which the chancellor was faced.

According to the complaint League Central is a Tennessee central credit union with offices in Nashville and Chattanooga. On or about July 20, 1982, the Commissioner of Banking approved the by-laws of Sunbelt Credit Union. Subsequently, the charter was amended to name the entity American Sunbelt. The by-laws of American Sunbelt provided for membership as follows:

> All stockholders, directors, employees, and customers of Nashville City Bank and Trust Company or entities affiliated with Nashville City Bank and Trust Company; all employees of such affiliated entities; and members of the families of all such persons shall be eligible for membership.

League Central further alleged that:

> ... the State Credit Union Share Insurance Corporation and representatives of Nashville City Bank and Trust Company conceived the common bond of Ameri-

can Sunbelt Credit Union for the purpose of merging Nashville-Asbury Credit Union into the American Sunbelt Credit Union. Plaintiff further believes and therefore avers that Nashville-Asbury Credit Union, whose shares were insured by the said State Credit Union Share Insurance Corporation, was in a troubled financial condition. The State Credit Union Share Insurance Corporation also approached Plaintiff for the purpose of discussing a proposed plan of merger between Nashville-Asbury Credit Union and Plaintiff pursuant to T.C.A. § 45–4–903. Plaintiff submitted a bid to the State Credit Union Share Insurance Corporation in connection with a proposed plan of merger between Plaintiff and Nashville-Asbury Credit Union, but the bid was not accepted. Instead, the Defendant Commissioner of Banking subsequently approved a merger between Nashville-Asbury Credit Union and the Defendant American Sunbelt Credit Union.

League Central also asserted that American Sunbelt would be in direct competition with it and that the charter and by-laws of American Sunbelt were unlawful. Plaintiff contended that it would be adversely affected economically because of the chartering of American Sunbelt. League Central additionally alleged that the "common bond" of American Sunbelt was so broad as to constitute a *de facto* central credit union. Finally, plaintiff alleged that the commissioner failed to take into account the impact of the chartering of American Sunbelt on League Central as required by T.C.A. § 45–4–101(c).[3]

---

**3.** *Corporation for carrying on credit union— Formation—Par Value of shares.—*

(c) The commissioner of banking may designate or approve, upon application, charters for credit unions to be designated as central credit unions and each of which must contain in its name the word "central." A proposed central credit union must also meet the following criteria:

(1) Fulfillment of such requirements as would apply to any other credit union chartered pursuant to this title and chapter;

(2) Demonstrated need for central credit union services of the one or more areas of the state, or if appropriate, the entire state, which

would be served by the proposed central credit union, giving particular consideration to the adequacy of existing central credit unions serving the state;

(3) The ability of the field of membership and the area to be served to support the proposed central credit union, giving consideration to:

(A) The competition offered by existing central credit unions;

(B) The history of the potential field of membership and area to be served as it is related to the potential support for an additional central credit union;

(C) Opportunities for profitable employment for central credit union funds as indicated by

Plaintiff sought revocation of the charter of Sunbelt, its dissolution and/or liquidation. Alternatively, League Central requested that the court order charter and by-law amendments "to comply with the credit union laws of the State of Tennessee." Finally, and also in the alternative, plaintiff sought a ruling that the commissioner acted unlawfully and exceeded his statutory authority, and requested that the commissioner be ordered to either revoke the charter of American Sunbelt or require amendments "to comply with the laws of the State of Tennessee."

League Central maintains that it has standing because it has alleged a substantial and definite interest in the case and has asserted economic injury by reason of the commissioner's unlawful chartering of American Sunbelt. Plaintiff contends that T.C.A. § 45–1–108[4] must be read to give League Central standing because if it does not, then no competing financial institution or member of the public will ever be able to contest the decision of the commissioner in granting a credit union charter. Finally, plaintiff says that if T.C.A. § 45–1–108 is inapplicable to this case, then it has standing to maintain a declaratory judgment action because there is no other available remedy.

Defendants, of course, contend that no declaratory judgment action will lie because there is no justiciable controversy and that T.C.A. § 45–1–108(a) here prohibits that review because plaintiff is not a "person who is aggrieved and directly affected by an order of the Commissioner...."

Against this backdrop the chancellor ruled:

> The Tennessee statutes which permit the establishment of state regulated cred-

it unions limit membership in a credit union to "groups having a common bond of occupation or association or to groups within a well-defined neighborhood, community, or rural district." T.C.A. § 45–4–301. Persons affiliated with Nashville City Bank and Trust Company have organized American Sunbelt. The by-laws provide that membership will include "all stockholders, directors, and employees and customers of Nashville City Bank and Trust Company...." League Central complains about the inclusion of Nashville City Bank's customers in the proposed membership, asserting that bank customers are not people having a "common bond" or people "within a well-defined neighborhood."

· · · · ·

The complaint does not allege sufficient standing under either of League Central's theories, declaratory judgment and certiorari. The only allegation of an interest in the Commissioner's American Sunbelt approval is League Central's allegation that the two companies' fields of membership overlap and that they will be in direct competition.

To maintain this declaratory judgment action, League Central must allege some substantial, definite and immediate economic consequence of the Commissioner's action. A mere fear of competition does not meet the test. A legally protectable interest must be at stake in order to maintain a declaratory judgment suit; League Central has no protectable right to be free from competition. Moreover, the complaint does not allege how competition will have an adverse effect on League Central or, for that matter, even

---

the commissioner of banking's review of credit union transactions and the number of potential credit union members of the proposed central credit union;

(D) Such other facts and circumstances bearing on the proposed central credit union and its relationship to the proposed field of membership, as in the opinion of the commissioner of banking may be relevant.

**4.** *Review of commissioner's orders—Enforcement.*—(a) A person who is aggrieved by an

order of the commissioner issued pursuant to § 45–1–107 is entitled to judicial review as provided in the Uniform Administrative Procedures Act compiled in chapter 5 of title 4. *A person who is aggrieved and directly affected by an order of the commissioner issued pursuant to other provisions of this title may seek judicial review as provided in §§ 27–9–101— 27–9–114.* (Emphasis supplied.)

allege that competition will have such an effect.

Review by certiorari is available to those "aggrieved and directly affected" by an order of the Commissioner of Banking. T.C.A. § 45–1–108. The allegation of possible potential competition does not meet the "directly affected" test. There are no facts alleged which reflect how League Central is or will be directly affected.

Though the Court does not reach a decision on the other grounds asserted in the defendants' motions, they do appear to have merit. The statute is confusing, but T.C.A. § 45–1–107(d) seems to give League Central an opportunity to seek a declaratory judgment from the Commissioner. League Central asserts that the statute does not apply; the Commissioner asserts that it does. If League Central pursued that remedy, the Commissioner would be hard pressed to deny the statute's applicability, having asserted in this Court that League Central should have acted pursuant to it. In addition, it seems well established that declaratory judgment is not available to one who seeks judicial review of an administrative decision. It is, after all, the responsibility of the Commissioner of Banking, not a Court, to approve or disapprove credit union charters. A court will only review the legality of the Commissioner's decision.

■ We concur wholeheartedly with the conclusion of the trial court. As recently as this month we have reaffirmed the principle that in order for a declaratory judgment suit to lie there must be a real and existing controversy and that this remedy is not available to decide theoretical or hypothetical disputes. *See S & P Enterprises v. Alexander,* —— S.W.2d —— Tenn. App. (filed August 2, 1983, at Nashville, and numerous authorities cited therein). No

such real dispute exists here between the parties. The allegation of adverse economic competition fails for three reasons in our judgment. Two were clearly stated by the chancellor. First, the fear of competition is insufficient to be a legally protectable interest. League Central has neither a statutory nor common law right to freedom from competition. Second, there is no allegation as to how competition might have such an adverse affect. Third, we do not believe the declaratory judgment relief was designed to allow a private citizen or entity to contest the administrative actions of a state official. *See Brooks v. City of Memphis,* 192 Tenn. 371, 241 S.W.2d 432 (1951). We recognize the rule to be different where there is "legislative action." *See Holdredge v. City of Cleveland,* 218 Tenn. 239, 402 S.W.2d 709 (1966). However, the action of the commissioner in approving the charter of American Sunbelt was clearly administrative or ministerial, not legislative. (*See* T.C.A. § 45–4–103 [5] which necessitates that the commissioner use his own judgment in this regard.)

■ We also hold that certiorari will not lie under T.C.A. § 45–1–108 and T.C.A. § 27–9–101. In our view League Central is not a "person aggrieved and directly affected" by the commissioner's ruling sufficient to bring suit.

■ At the very least, we believe that a party should allege facts demonstrating that he, she or it is adversely affected by the decision of the administrative agency in order to be classified as an aggrieved person and therefore to be entitled to judicial review. The "aggrieved and directly affected" person should be able to show a special interest in the final decision and that he, she or it is subject to a special injury not common to the public generally. *See Sachs v. Shelby County Election Commission,* 525 S.W.2d 672 (Tenn.1975); *Ben-*

---

**5.** *Certificate of approval issued by commissioner of banking on approval.*—The commissioner of banking shall approve the certificate of organization, and the bylaws, and if satisfied that the proposed field of operation is favorable to the success of such corporation and that the standing of the proposed incorporators is such as to give assurance that its affairs will be properly administered, he shall thereupon issue to the proposed incorporators a certificate of approval, annexed to the duplicate of said certificate of organization and of said bylaws.

*nett v. Stutts,* 521 S.W.2d 575 (Tenn.1975); *see also Blair v. State ex rel. Watts,* 555 S.W.2d 709 (Tenn.1977).

■ Moreover, League Central was not a party to American Sunbelt's application or any of the proceedings whereby *American Sunbelt* was chartered. We do not believe the legislature intended this statute to allow a potential competitor of an applicant the right of suit.[6] Absent a clear legislative intent to the contrary we believe it would be a dangerous precedent indeed to hold that a public official is subject to suit by a private individual or entity in competition, direct or indirect, with another individual or entity, chartered, licensed and/or regulated by that official under law. If we were to allow this action to lie absent a specific mandate therefor, why should not a competing bank or savings and loan association be allowed to bring suit against the commissioner every time there is an application to charter a new bank or savings and loan association in an attempt, whether successful or not, to stifle competition? Or why should not an existing domestic insurance company be allowed to sue the Commissioner of Insurance on the same bases when that commissioner acts favorably on the application of a new applicant, either foreign or domestic, to transact business in Tennessee? Obviously, to countenance such action would invite chaos.

■ We have serious reservations as to whether the actions of the commissioner in here granting the application of *American Sunbelt* could ever be considered "illegal." The commissioner must of necessity be given wide discretion in these matters. *See* T.C.A. § 45–4–103, *supra.* On the face of the complaint the "common bond" of customers of Nashville City Bank is likely as great as that bond in effect between persons affiliated with other organizations which have been allowed to form credit unions, e.g., governmental workers spread far and wide with no real common bond other than that they are paid from the same treasury, groups whose sole affiliation is religious, or those who happen to be in the same line of work such as farming. At least here the "common bond" with depositors is economic in nature and the institution which is the basis for the "common bond," Nashville City Bank, is itself subject to close governmental scrutiny.

In the last analysis the dissatisfaction of League Central that its bid for Nashville-Asbury Credit Union was not accepted and its fear of competition from American Sunbelt is simply insufficient to provide standing to sue either the commissioner or the new credit union.

Accordingly, the judgment of the chancellor is affirmed and this cause is remanded. The costs are taxed against League Central.

AFFIRMED AND REMANDED.

TODD, P.J., (M.S.), and LEWIS, J., concur.

---

6. We believe plaintiff had the right to petition the commissioner for a declaratory ruling regarding the correctness of the action taken, but did not choose to exercise it. T.C.A. § 45–1–107(d) provides:

> *Powers and duties of commissioner.—*
> \* \* \*
> (d) The commissioner may, on petition of any interested person and after hearing, issue a declaratory order with respect to the applicability to any person, property or state of facts under this title or a rule issued by the commissioner. The order shall bind the commissioner and all parties to the proceeding on the state of facts alleged unless it is modified or reversed by a court. A declaratory order may be reviewed and enforced in the same manner as other orders of the commissioner, but the refusal to issue a declaratory order shall not be reviewable.