# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### ASSIGNED ON BRIEFS OCTOBER 23, 2000

## JACKIE L. REYNOLDS, ET AL. v. TAMMY M. BATTLES, ET AL.

**Direct Appeal from the Circuit Court for Hardin County**
**No. 3194; The Honorable C. Creed McGinley, Judge**

---

**No. W2000-00340-COA-R3-CV - Filed February 6, 2001**

---

This case involves three alleged criminal conspiracies committed by the Appellees against the Appellants. The Appellants filed a complaint against the Appellees in the United States District Court for the Western District of Tennessee. The district court dismissed the Appellants' complaint for lack of jurisdiction. The Appellants then filed a complaint against the Appellees in the Circuit Court of Hardin County. The Appellees brought a motion to dismiss. The trial court granted the Appellees' motion to dismiss, finding that the Appellants' complaint was barred by the statute of limitations and failed to state a claim for which relief can be granted.

The Appellants appeal the dismissal of the Appellants' complaint. For the reasons stated herein, we reverse the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Jackie L. Reynolds and Audrey Jeannine Reynolds, *pro se*

No filing on behalf of Appellees

## OPINION

### Facts and Procedural History

This case stems from a child custody dispute involving the family of the Appellants, Jeannine and Jackie Reynolds ("the Reynolds"), and the Appellees, Tammy and Gregory Battles ("the

Battles").[1] As related by the Reynolds, the facts are as follows.[2] Mrs. Battles had drug problems and lost custody of her four-year-old daughter, Bridgett Day ("Bridgett"), to Mrs. Battles' parents, Billy and Patsy Moffett ("the Moffetts"), in January, 1998. In April, 1998, the Juvenile Court of McNairy County granted Mrs. Battles daily visitation with Bridgett. On July 4, 1998, the Battles failed to return Bridgett to the Moffetts after their daily visit and took her to an apartment in Bellevue, Tennessee. The Battles learned that the Moffetts planned to seek a juvenile court warrant for Bridgett's return, so they planned to leave Tennessee to avoid service of the warrant.

The first criminal conspiracy began on July 15, 1998 when Mr. Battles called Mrs. Reynolds at her home in Savannah, Tennessee. Mr. Battles lured Mrs. Reynolds to the apartment in Bellevue to persuade her to lend the Battles one thousand dollars and drive them to Baton Rouge, Louisiana. On July 16, 1998, Mrs. Reynolds was coerced into leaving Bellevue with Mrs. Battles. Prior to or immediately after leaving Bellevue, Mrs. Battles gave Mrs. Reynolds an unknown substance which rendered her unconscious. While in a drugged state, Mrs. Reynolds was taken to her home in Savannah where Mrs. Battles took Mrs. Reynolds' prescription drugs. Mrs. Battles then took Mrs. Reynolds to Mississippi. Mrs. Battles hit Mrs. Reynolds on the back of the head with a blunt object, which inflicted a serious injury and rendered her unconscious. After Mrs. Reynolds regained consciousness, she had no memory of where she was or what had happened.

The second criminal conspiracy occurred between July 16 and July 27, 1998. During this time, the Battles concealed Mrs. Reynolds' abduction and assault from Mrs. Reynolds and her family. The Battles transported Mrs. Reynolds without her consent to Louisiana, Tennessee, Kentucky, and Georgia. The Battles administered drugs to Mrs. Reynolds, and they gave her nothing to eat and very little to drink. The Battles forced Mrs. Reynolds to write checks on her checking account totaling over $400.00. They also fraudulently obtained and used her credit cards and automobile. The Battles denied Mrs. Reynolds necessary medical care and concealed from hospital personnel the cause of her injuries, her drugged condition, and her insurance coverage. On July 19, 1998, the Battles burglarized Mrs. Reynolds' home in Savannah, which resulted in several broken windows and a damaged rear door. On July 23, 1998, Mrs. Battles misrepresented herself as Mrs. Reynolds to a pharmacist and filled Mrs. Reynolds' prescriptions for Xanax. On or about July 24, 1998, Mrs. Reynolds was beaten on her legs and the lower part of her body. Mr. Battles' father, James Battles, then took Mrs. Reynolds to a hospital in Atlanta, Georgia. The hospital ran a drug test on Mrs. Reynolds which showed that she was under the influence of the drug Benzodiazepine. After leaving the hospital, James Battles raped Mrs. Reynolds while she was unconscious. On July 27, 1998, the Battles returned Mrs. Reynolds to the apartment in Bellevue, and Mrs. Reynolds' son then drove her home to Savannah.

On July 30, 1998, the Moffetts took Bridgett from the Battles. Mrs. Battles was ordered to appear in the Juvenile Court of McNairy County on August 18, 1998. The Battles learned that Mrs.

_____

[1]Mrs. Reynolds is Mrs. Battles' aunt.

[2]The Appellees failed to file a brief. Additionally, the record contains no recitement of facts by the Appellees.

Reynolds planned to testify for the Moffetts. The third criminal conspiracy began when the Battles attempted to intimidate the Reynolds so that they would not testify for the Moffetts and would not go to the police for the kidnapping of Mrs. Reynolds. One or both of the Battles contacted the Reynolds' family members and friends, Mrs. Reynolds' doctor, and two agents of the Tennessee Bureau of Investigation and told them several false statements.[3] Additionally, the Battles manufactured false testimony to discredit Mrs. Reynolds in court. One or both of the Battles broke into the Reynolds' home and took Mrs. Reynolds' medical records, including the drug test performed at the Atlanta hospital. On September 1, 1998, Mrs. Reynolds learned of the blow to the back of her head and the swelling of her brain. In late September, Mrs. Reynolds learned that the Battles concealed the location of the assault and the fact that she had not tripped and hit her head. The Juvenile Court of McNairy County held a hearing to decide the custody of Bridgett on October 12, 1998. A document was entered as an exhibit in which James Battles falsely stated that he had consensual sex with Mrs. Reynolds. The Battles had Mrs. Reynolds' drug test from the Atlanta hospital in their possession at the hearing. The court allowed the Battles' attorney to question Mrs. Reynolds about the results of the drug test.

On January 19, 1999, the Reynolds filed a complaint against the Battles, James Battles, Clark Shaw, and Charles Watson Cross[4] in the United States District Court for the Western District of Tennessee. The federal court dismissed the Reynolds' complaint for lack of jurisdiction on February 5, 1999.[5] On August 24, 1999, the Reynolds filed a complaint against the Battles in the Circuit Court of Hardin County. The Reynolds claimed that the Battles violated several criminal statutes[6] and committed slander and libel.[7] They sought compensatory and punitive damages. The Battles did not file an answer to the complaint but filed a motion to dismiss on September 28, 1999. On November 18, 1999, the trial court held a hearing on the Battles' motion to dismiss. The trial court granted the Battles' motion to dismiss on the following grounds: (1) the claims were outside the statute of limitations because the filing of the complaint in the federal court did not toll the running of the statute of limitations; (2) Mrs. Reynolds' injuries did not toll the running of the statute of limitations; and (3) the complaint failed to state a claim. This appeal followed.

---

[3] The Reynolds cite eight false statements in their complaint, including statements that Mrs. Reynolds willingly went with the Battles, she was a drug addict, and she had consensual sex with James Battles.

[4] Clark Shaw and Charles Watson Cross are attorneys from Nashville, Tennessee who advised or represented the Battles at various times.

[5] On March 1, 1999, the Reynolds re-filed their complaint against James Battles in the United States District Court for the Western District of Tennessee. The Reynolds claim that the district court entered an order of judgment against James Battles.

[6] See Tenn. Code Ann. §§ 39-11-302, 402 (1997); Tenn. Code Ann. § 39-12-103 (1997); Tenn. Code Ann. § 39-13-101 (1997); § 39-13-102 (Supp. 2000); Tenn. Code Ann. §§ 39-13-103, 304, 401 (1997); Tenn. Code Ann. §§ 39-14-105, 106 (1997); Tenn. Code Ann. § 39-16-507 (1997). The Reynolds also cite generally the Mississippi and Georgia assault statutes and the Georgia rape statute.

[7] The Reynolds specifically claim that the Battles violated section 29-24-101 of the Tennessee Code.

## Standard of Review

The standard of review for a non-jury case is *de novo* upon the record. See Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. Rule 13(d). For issues of law, the standard of review is *de novo*, with no presumption of correctness. See Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

## Law and Analysis

There are two issues presented for our review: (1) whether the trial court erred in finding that the Reynolds' complaint was barred by the statute of limitations; and (2) whether the trial court erred in finding that the Reynolds' complaint failed to state a claim for which relief can be granted. We examine each of these issues in turn.

## Statute of Limitations

The Reynolds argue that the trial court erred in dismissing their complaint as barred by the statute of limitations. The Reynolds claim that dismissal of their complaint in federal court for lack of jurisdiction tolled the running of the statute of limitations pursuant to section 28-1-115 of the Tennessee Code. Section 28-1-115 states, "Notwithstanding any applicable statute of limitations to the contrary, any party filing an action in a federal court that is subsequently dismissed for lack of jurisdiction shall have one (1) year from the date of such dismissal to timely file such action in an appropriate state court." Tenn. Code Ann. § 28-1-115 (2000). The Reynolds filed their complaint with the United States District Court for the Western District of Tennessee on January 19, 1999. This date was within the six month statute of limitations for slander[8], the one year statute of limitations for personal tort actions[9], and the three year statute of limitations for property tort actions.[10] The federal court subsequently dismissed the complaint for lack of jurisdiction. Under section 28-1-115, the Reynolds had one year from the date of the federal court's dismissal to file the action in the appropriate state court since they filed their complaint in federal court and the complaint was dismissed for lack of jurisdiction. The Reynolds filed their complaint with the Circuit Court of Hardin County on August 24, 1999 which was within the one year period. Because section 28-1-115 tolled the statute of limitations following the dismissal for lack of jurisdiction of the Reynolds'

---

[8] Section 28-3-103 of the Tennessee Code states, "Actions for slanderous words spoken shall be commenced within six (6) months after the words are uttered." Tenn. Code Ann. § 28-3-103 (2000).

[9] Section 28-3-104 of the Tennessee Code states in relevant part, "The following actions shall be commenced within one (1) year after the cause of action accrued: Actions for libel, for injuries to the person, false imprisonment . . . ." Tenn. Code Ann. § 28-3-104 (a)(1) (2000).

[10] Section 28-3-105 of the Tennessee Code states in relevant part, "The following actions shall be commenced within three (3) years from the accruing of the cause of action: (1) Actions for injuries to personal or real property; (2) Actions for the detention or conversion of personal property; . . ." Tenn. Code Ann. § 28-3-105 (2000).

complaint in federal court, we find that the trial court erred in finding that the Reynolds' complaint was barred by the statute of limitations.[11]

## Failure to State a Claim

The Reynolds argue that the trial court erred in dismissing their complaint for failure to state a claim upon which relief can be granted. A Rule 12.02(6)[12] motion to dismiss for failure to state a claim upon which relief can be granted tests only the sufficiency of the complaint, not the strength of a plaintiff's proof. See Merriman v. Smith, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979). The determination of a Rule 12.02(6) motion to dismiss is based upon an examination of the complaint alone. See Wolcotts Fin. Serv., Inc. v. McReynolds, 807 S.W.2d 708, 710 (Tenn. Ct. App. 1990). The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law. See Shelby County v. King, 620 S.W.2d 493, 494 (Tenn. 1981); Shipley v. Knoxville Journal Corp., 670 S.W.2d 222, 223 (Tenn. Ct. App. 1984). The motion "admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action." League Cent. Credit Union v. Mottern, 660 S.W.2d 787, 789 (Tenn. Ct. App. 1983) (citations omitted). In scrutinizing the complaint in the face of a Rule 12.02(6) motion to dismiss, "the court should construe the complaint liberally in favor of the plaintiff," taking all allegations of fact therein as true. Fuerst v. Methodist Hospital South, 566 S.W.2d 847, 848-49 (Tenn. 1978) (citing Holloway v. Putnam County, 534 S.W.2d 292, 296 (Tenn. 1976)). The motion should be denied unless it appears that the plaintiff "can prove no set of facts in support of his claim that would entitle him to relief." Fuerst, 566 S.W.2d at 848 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The Reynolds first argue that the trial court erred in dismissing the complaint for failure to state a claim because this issue was never properly brought before the trial court. In its order of dismissal, the trial court stated that the complaint failed to state a claim for which relief can be granted. The Battles' motion to dismiss, however, did not specifically demand that the Reynolds' complaint be dismissed for failure to state a claim pursuant to Rule 12.02(6). We disagree with the Reynolds' argument. A trial court need not wait until a defendant files a motion to dismiss for failure to state a claim under Rule 12.02(6). Rather, a trial court has the authority to dismiss a

---

[11]We decline to address the Reynolds' argument that the statute of limitations was tolled because the Battles fraudulently concealed Mrs. Reynolds' injuries.

[12]Rule 12.02(6) states:

> Every defense in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing: . . . (6) failure to state a claim upon which relief can be granted, . . .

Tenn. R. Civ. P. 12.02(6).

complaint sua sponte if the complaint fails to state a claim for which relief can be granted. See Huckeby v. Spangler, 521 S.W.2d 568, 571 (Tenn. 1975).

The Reynolds also argue that the trial court erred in dismissing the complaint for failure to state a claim because the complaint met the requirements set forth in Rule 8.01 of the Tennessee Rules of Civil Procedure. Rule 8.01 states that a complaint "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." Tenn. R. Civ. P. 8.01. We find that the Reynolds have substantially complied with the requirements of Rule 8.01. Although the Reynolds incorrectly plead violations of criminal statutes, we are sensitive to the fact that the Reynolds bring this action pro se. "[T]he allegations of a complaint drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a pro se complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972)); see also Winchester v. Little, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998). The Reynolds' complaint states that the Battles committed various wrongs against them, that injuries occurred as a result, and that compensatory and punitive damages are sought. We find that the Reynolds' complaint was sufficient to put the Battles on notice of the claims against them.

In its order of dismissal, the trial court stated, "[t]he allegations contained within said complaint allege criminal violations but request civil damages. That due to the significant number of criminal charges which have been asserted within the complaint, it fails to state a claim for which relief can be granted . . . ." We agree that the Reynolds cannot recover civil damages based upon alleged criminal statutory violations. We do not agree, however, with the trial court's statement that the complaint should be dismissed for failure to state a claim because it did not state with "sufficient specificity so that the [Battles] could be apprised of what the civil action is." The Battles stated in their memorandum of law in support of their motion to dismiss that the Reynolds specifically alleged the torts of slander and libel. The Battles further stated that the other causes of action were unclear and ambiguous but inferred from the complaint the torts of false imprisonment, trespass to property, trespass to chattels, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Reynolds cite Collier v. Slayden Bros. Ltd. Partnership, 712 S.W.2d 106 (Tenn. Ct. App. 1985), for the proposition that "[c]omplaints should not be dismissed because of ambiguity, indefiniteness or uncertainty where there exists the remedy of obtaining a more definite statement." Id. at 108. We agree. The Battles should have filed a Rule 12.05[13] motion

---

[13]Rule 12.05 states:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. . . .

Tenn. R. Civ. P. 12.05.

for a more definite statement pointing out the ambiguities in the Reynolds' complaint and requesting a statement as to the civil causes of action alleged.  See id.

In light of the Reynolds' status as pro se litigants, the liberality the trial court should have taken in determining whether their complaint failed to a state a claim, the Battles' remedy of filing a motion for a more definite statement, and the numerous tort claims that the trial court and the Battles should have construed from the complaint, we find that the trial court erred in dismissing the Reynolds' complaint for failure to state a claim upon which relief can be granted.

## Conclusion

For the foregoing reasons, we reverse the trial court's dismissal of the Appellants' complaint and remand this cause for further proceedings consistent with this opinion.  The Appellees should be allowed to file an answer, and the case can then be conducted to a conclusion.  Costs of this appeal are taxed against the Appellees, Tammy and Gregory Battles, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE