IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2004 Session

## HELEN BROYLES v. EMMA WOODSON, ET AL.

**Appeal from the Chancery Court for Campbell County**
**No. 15,547     Billy Joe White, Chancellor**

---

**No. E2004-00402-COA-R3-CV - FILED FEBRUARY 17, 2005**

---

Helen Broyles ("Plaintiff") sued Emma Woodson and the Estate of H.Y. Woodson, Emma Woodson, Executrix ("Defendants") claiming that her husband and H.Y. Woodson entered into an agreement in 1990 for Plaintiff's husband to purchase a house located in LaFollette, Tennessee for $21,000. Both Plaintiff's husband and H.Y. Woodson had passed away when the complaint was filed. Plaintiff claimed Emma Woodson was not calculating interest properly and had not given Plaintiff proper credit for the house payments that had been made. Plaintiff requested the Trial Court examine the relevant documentation and establish the amount of Plaintiff's equity and the amount still owing. It was admitted by the parties that there was an agreement of some sort between their deceased husbands. However, that agreement was either an oral agreement or, if it had been reduced to writing, the written instrument appeared to be lost or destroyed. The Trial Court granted summary judgment to Defendants after concluding: (1) the Statute of Frauds rendered the agreement unenforceable; (2) the Dead Man's Statute precluded admission into evidence of any proof regarding the terms of the agreement; and (3) Defendants had negated an essential element of Plaintiff's contract claim which required her to establish the essential elements of the alleged contract with reasonable definiteness. Plaintiff appeals, and we affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Timothy Webb, Jacksboro, Tennessee, for the Appellant Helen Broyles.

Joseph G. Coker, Jacksboro, Tennessee, for the Appellees Emma Woodson and the Estate of H.Y. Woodson, Emma Woodson, Executrix.

# OPINION

## Background

Plaintiff claims that in October of 1990, her now deceased husband entered into an agreement with H.Y Woodson to purchase a house located in LaFollette, Tennessee. According to Plaintiff, she and her husband took possession of the house and began making regular monthly payments in the amount of $200 toward the indebtedness. After both Plaintiff's husband and H.Y. Woodson passed away, Plaintiff claims she continued to make the same regular monthly payments, although the payments were sent to H.Y. Woodson's widow, defendant Emma Woodson ("Mrs. Woodson"). Plaintiff filed this lawsuit in December of 2001 claiming she has never been given a copy of the contract evidencing the sale of the house even though she has made numerous requests asking for it. Plaintiff also claimed the receipts given to her by Mrs. Woodson do not show a proper interest calculation and that she had paid "much more than has been reflected in her receipts." Plaintiff requested the Trial Court examine all of the relevant documents and "reform the contract to give her proper credit, showing the proper equity she has built, as well as the remaining liability." Plaintiff filed this lawsuit against Mrs. Woodson individually and the Estate of H.Y. Woodson, Emma Woodson, Executrix.

On April 19, 2002, Plaintiff filed a motion for default judgment. Plaintiff claimed in this motion that: (1) the complaint was filed on December 6, 2001; (2) Mrs. Woodson was personally served with process on February 26, 2002; (3) Mrs. Woodson was required to "make appearance, answer, and make defense" by March 28, 2002; and (4) Mrs. Woodson failed to do so. According to the record on appeal, no action was taken to schedule a hearing on the motion for default judgment even though no response to that motion ever was filed. We likewise can find no order showing that the Trial Court actually ruled on Plaintiff's motion for default judgment.

On July 2, 2002, two motions to dismiss were filed. The first motion to dismiss was filed on behalf of the Estate of H.Y. Woodson, Emma Woodson, Executrix. According to this motion, H.Y. Woodson died on November 26, 2000, and his estate was probated in the Campbell County Chancery Court, Probate Division. The estate was opened on December 27, 2000, and Mrs. Woodson was appointed as executrix. The motion then described the following events:

> [O]n December 27, 2000, … letters testamentary were issued.…
> [T]he Notice to Creditors required by Tennessee Code Annotated
> Sections 30-2-306, 314, and 317, was published in The LaFollette
> Press, a newspaper of general circulation in Campbell County,
> Tennessee, on January 4, 2001, and January 11, 2001; that no claims
> were filed against said estate of H.Y. Woodson, deceased; and that
> any potential claims were barred after the expiration of four (4)
> months from the date of the first publication on January 4, 2001.

* * *

[U]pon the closing of the Estate of H.Y. Woodson on August 31, 2001, the Movant, Emma Woodson, no longer has the legal capacity [to] be sued as Executrix of the estate or to otherwise act on behalf of the estate pursuant to Tennessee Code Annotated Section 30-2-701, and under Tennessee law generally, and that any unfiled claims against the estate were barred after Friday, May 4, 2001, pursuant to Tennessee Code Annotated Section 30-2-310, and/or Tennessee Code Annotated Section 30-2-501, and under Tennessee law generally. Further, that H.Y. Woodson, was deceased on November 26, 2000; that this action was filed on December 6, 2001, more than one (1) year from the date of death of H.Y. Woodson, deceased, and that such claims are therefore also barred after Monday, November 26, 2001, pursuant to Tennessee Code Annotated Section 30-2-310, and under Tennessee law generally.

The second motion to dismiss was filed by Mrs. Woodson in her individual capacity. In this motion, Mrs. Woodson claimed that after a diligent search, she could locate neither an original nor a copy of any alleged sale agreement regarding the subject property. Mrs. Woodson added that if such an agreement ever did exist, it probably was destroyed by a fire which occurred on or about June 30, 1991. Mrs. Woodson argued that Plaintiff failed to state a claim upon which relief could be granted pursuant to Tenn. R. Civ. P. 12.02(6). Mrs. Woodson further maintained that Plaintiff's claims were barred by the statute of frauds, Tenn. Code Ann. § 29-2-101 ("Statute of Frauds"), and Tenn. R. Civ. P. 8.03 because the complaint did not allege any writing signed by Mrs. Woodson which obligated her to convey the land to Plaintiff or which set forth the terms of any purported agreement.

Even though the motions to dismiss still were pending, on November 2, 2002, Defendants filed a motion for summary judgment. A Statement of Undisputed Material Facts was filed in support of the motion for summary judgment and "in support of the Motion to Dismiss as to 'Estate of H.Y. Woodson, Emma Woodson, Executrix' … and also in support of the Motion to Dismiss as to Emma Woodson, individually…." In the Statement of Undisputed Facts, Defendants relied upon Requests for Admissions, Interrogatories, and Requests for Production of Documents which had been answered by Plaintiff, as well as several exhibits which were attached to these documents.

As noted, Mrs. Woodson argued in her motion to dismiss that Plaintiff's claims were barred by the Statute of Frauds and further that Plaintiff failed to allege the existence of any writing which would obligate her to convey the land to Plaintiff. It is worth noting that by this point in the litigation, it was clear that any alleged agreement between Plaintiff's husband and H.Y. Woodson was either an oral agreement or, if it had been reduced to writing, the written instrument was forever lost or destroyed. As a result, Plaintiff had some significant obstacles to overcome, in particular the Statute of Frauds which, generally speaking, requires a contract for the sale of land to be in writing and signed by the party to be charged therewith in order for that contract to be enforceable. *See*

Tenn. Code Ann. § 29-2-101(a)(4). Assuming Plaintiff could somehow get around the requirements of the Statute of Frauds, she then would have to establish the essential terms of the alleged contract between her husband and H.Y. Woodson. *See*, *e.g.*, *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App. 1990)("To be valid and enforceable, ... a contract must be reasonably definite and certain in its terms so that a court may require it to be performed.… It must spell out the obligations of each of the parties with reasonable definiteness. Indefiniteness as to any essential element of the agreement may prevent the creation of an enforceable contract.")(quoting *Union State Bank v. Woell*, 434 N.W.2d 712, 717 (N.D. 1989)).

Notwithstanding the basis upon which Mrs. Woodson claimed the lawsuit should be dismissed, Mrs. Woodson effectively admitted that her husband had entered into some sort of an agreement with Plaintiff's husband when she filed Requests for Admissions asking Plaintiff to admit the following:

(1)     That on or about October 1, 1990, the Plaintiff, Helen Broyles, and her now deceased husband, Donald Broyles, entered into an agreement with H.Y. Woodson, the now deceased husband of the Defendant, Emma Woodson, to purchase a certain house and land located at 406 River Drive, LaFollette, Tennessee 37766.

(2)     That the terms of the agreement referenced in Request (1) above provided for a purchase price of Twenty One Thousand ($21,000.00) Dollars.

(3)     That the terms of the agreement referenced in Request (1) above provided for payment of interest at seven (7.00%) percent per annum annual percentage rate (APR).

(4)     That the terms of the agreement referenced in Request (1) above provided for monthly payments of principal and interest in the amount of Two Hundred ($200.00) Dollars.

* * *

(11)     That the balance due on the house and land as referenced in Request (1) above bears interest at the agreed rate of seven (7.00%) percent per annum annual percentage rate (APR).

(12)     That an interest rate of seven (7.00%) percent per annum annual percentage rate (APR) is a fair and reasonable rate of interest with respect to the house and land referenced in Request (1) above.

When Plaintiff answered these requests for admissions, she admitted only that her husband and H.Y. Woodson had entered into an agreement for Plaintiff's husband to purchase the house for $21,000. Plaintiff denied the remaining requests based on lack of knowledge and, as a result, an essential element of the sale contract, i.e., the interest rate, continued to be in dispute and Plaintiff seemed to be without any proof to establish this essential element.

On May 5, 2003, a hearing was conducted on Defendants' three pending motions. This hearing was ten months after the motions to dismiss were filed, and approximately six months after the motion for summary judgement was filed. Plaintiff never filed a response to any of these three motions. An order was entered by the Trial Court sixteen days after the hearing granting both motions to dismiss as well as the motion for summary judgment. The Trial Court did not state in the order why the motions were being granted and the record contains no transcript from the hearing.

Even though there had been no trial, Plaintiff filed a "Motion for New Trial and Motion to Set Aside Judgment." In this motion, Plaintiff claimed the Trial Court specifically stated at the May 5th hearing that it would wait thirty days before issuing any ruling. However, the Trial Court entered its order dismissing the case only sixteen days after the hearing, or as Plaintiff claims, at least fourteen days prematurely. Plaintiff argued in her motion that she "verily believes that she will be able to provide the evidence necessary for a meritorious claim should she be allowed to present same." Plaintiff further claimed that the Trial Court did not hear any testimony at the hearing and had such testimony been allowed it "would have shown Plaintiff to have a meritorious claim."

Before we discuss the Trial Court's ruling on Plaintiff's "Motion for New Trial," we feel compelled to mention several points. First, we have not been provided a transcript from the hearing where the Trial Court supposedly indicated it would wait thirty days before issuing a ruling. Without a transcript we cannot verify the accuracy of this assertion or its import. Second, Plaintiff's complaint had been pending for one year and five months before it was dismissed. In her "Motion for New Trial" Plaintiff offered absolutely no explanation why one year and five months was insufficient for her to develop necessary evidence, but an additional fourteen days would have done the trick. Third, assuming Plaintiff's testimony would have shown the existence of a meritorious claim, Plaintiff again offered no explanation why that testimony was not presented to the Trial Court in the form of an affidavit and filed in response to Defendants' motion for summary judgment which had been pending for six months. *See* Tenn. R. Civ. P. 56.06. Along this line we further note that Plaintiff's "Motion for New Trial" was filed thirty days after entry of the order of dismissal and forty-six days after the hearing. If Plaintiff needed thirty days from the date of the hearing in order to come up with evidence of her meritorious claim, this Court is at a loss as to why the Trial Court was not provided with any of that evidence forty-six days later when the "Motion for New Trial" was filed.

In December of 2003 the Trial Court conducted a hearing on Plaintiff's "Motion for New Trial and Motion to Set Aside Judgment" and an order ruling on the motion was entered the following month. The Trial Court's order detailed the various pleadings which had been reviewed prior to entry of the order and noted it also had considered "the arguments of counsel … [and] the

record as a whole" before concluding: (1) Plaintiff's claims were barred by the "Dead Man Statute set forth in Tennessee Code Annotated 24-1-203"; (2) Plaintiff's claims were barred by the Statute of Frauds, Tenn. Code Ann. § 29-2-101, as well as Tenn. R. Civ. P. 8.03; (3) because no written contract ever was found and because the parties could not agree to the essential terms of any agreement which may have existed, the court could not speculate as to the missing terms; and (4) there was "not sufficient relevant admissible evidence to carry the burden of proof required of the Plaintiff in this case." After making these findings the Trial Court denied Plaintiff's motion. Once again we have not been provided a transcript from the hearing.

Plaintiff appeals raising the following issues, which we quote:

I.      Whether the Court Should Have Entered a Default Judgment against Defendants Prior to the Filing of the Motion to Dismiss by Defendant[s].

II.     Whether the Court Erred by Granting Summary Judgment to Defendants and/or Granting Defendants' Motion to Dismiss Without Viewing the Evidence Contained Within the Record in Furtherance of Her Claim to the Subject Property Which Bore Direct Relation to Her Claim.

The only issue raised by Defendants is their claim that Plaintiff's appeal is frivolous and damages should be awarded pursuant to Tenn. Code Ann. § 27-1-122.

## Discussion

With regard to Plaintiff's first issue, we review a trial court's decision to grant or deny a motion for default judgment under an abuse of discretion standard. *See Pache Indus., LLC v. Wallace Hardware Co.*, No. E2003-01483-COA-R3-CV, 2003 Tenn. App. LEXIS 802, at * 4 (Tenn. Ct. App. Nov. 12, 2003), *no appl. perm. appeal filed* (citing *State of Tennessee ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000)). Although Plaintiff's motion for default judgment only references a single "Defendant" and never identifies which Defendant the motion applies to, for present purposes we assume it was intended to apply to both Defendants.

As relevant to this appeal, Tenn. R. Civ. P. 55.01 provides:

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default shall apply to the court. All parties against whom a default judgment is sought shall be

served with a written notice of the application for judgment at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action.…

The plain language of Rule 55.01 thus contemplates a hearing on any application for default judgment. After Plaintiff filed her motion for default judgment, no steps were taken to schedule that motion for a hearing. Therefore, the motion for default judgment still was pending when Defendants filed their motions to dismiss and motion for summary judgment. According to the record, the very first hearing in this case occurred on May 5, 2003, after which the Trial Court granted all three of Defendants' motions and dismissed the lawsuit. The order from the May 5th hearing specifically identifies which motions were considered by listing all three of Defendants' motions. No mention is made of Plaintiff's motion for default judgment. Because we have no transcript from the hearing, this Court can only speculate on whether Plaintiff informed the Trial Court that her motion for default judgment had yet to be ruled upon. The Trial Court may well have assumed that Plaintiff had abandoned her motion in light of the various motions filed by Defendants and the discovery which had taken place in the interim. We simply do not know.

Since the granting of a Rule 55.01 motion for default judgment is discretionary, by definition a trial court never is required to grant such a motion unless the failure to do so would be an abuse of discretion. Even if we assume Plaintiff met the requirements of Rule 55.01, this would mean only that the Trial Court's discretion on whether to grant the motion was triggered. In her brief, Plaintiff simply argues that she met the requirements of Rule 55.01 and, therefore, the Trial Court erred in not granting her motion. This argument would be correct only if the Trial Court had no discretion. Because the Trial Court does have discretion, Plaintiff must take matters one step further. Specifically, she must show not only that she met the requirements of Rule 55.01 and the Trial Court denied her motion, but she also must affirmatively establish why the denial of her motion amounted to an abuse of discretion. Even assuming the Trial Court did consider Plaintiff's motion for default judgment and that it was implicitly denied, Plaintiff has offered no argument nor can we find one which would enable us to conclude that the Trial Court abused its discretion. Further, if the Trial Court never considered Plaintiff's motion for default judgment because a hearing never was scheduled or because it assumed the motion had been abandoned, then the fault lies with Plaintiff and we again decline to award her any relief on appeal as to this issue. *See* Tenn. R. App. P. 36(a)("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

The next issue is whether the Trial Court properly granted the three motions filed by Defendants, which were comprised of two motions to dismiss and one motion for summary judgment. As relevant to this appeal Tenn. R. Civ. P. 12.02 provides that:

If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court,

the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The primary argument of both motions to dismiss was that Plaintiff failed to state a claim upon which relief could be granted. Since matters outside the pleadings were presented to and considered by the Trial Court when ruling on these motions, they were converted from Rule 12.02(6) motions into Rule 56 motions for summary judgment. The distinction between a Rule 12.02(6) motion and a Rule 56 motion is significant:

> While the controlling question on appeal is still a question of law, it is now a Rule 56 question rather than a Rule 12.02(6) question. The Rule 12.02(6) question is whether or not the complaint, without any consideration of extraneous materials, fails to "state a claim upon which relief can be granted." Tenn. R. Civ. P. 12.02(6); *see also League Cent. Credit Union v. Mottern*, 660 S.W.2d 787 (Tenn. Ct. App. 1983). A Rule 56 motion, however, addresses not the allegations of the complaint, but the merits of the litigation. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978). The question here is not whether the allegations of the complaint are sufficient to state a cause of action but "what material facts are actually and in good faith controverted." Tenn. R. Civ. P. 56.05.

*Brick Church Transmission, Inc. v. Southern Pilot Ins. Co.*, 140 S.W.3d 324, 328-29 (Tenn. Ct. App. 2003). Accordingly, we will review the Trial Court's granting of all three of Defendants' motions using the summary judgment standard recently reiterated by our Supreme Court in *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004):

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *See Staples v. CBL & Assoc., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: 1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and 2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *Staples*, 15 S.W.3d at 88.

\* \* \*

When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

*Blair*, 130 S.W.3d at 763-64, 767 (quoting *Staples*, 15 S.W.3d at 88-89). *Blair* also makes clear that a motion for summary judgment must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense before the burden of production will shift to the non-moving party. It is insufficient simply to assert that the opposing party will be unable to prove her claims at trial. *Id.* at 767-69.

Our Supreme Court also has provided instruction regarding assessing the evidence when dealing with a motion for summary judgment, stating:

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000).

There were four reasons the Trial Court concluded summary judgment was appropriate. The first two reasons involved Defendants conclusively establishing affirmative defenses, i.e., that Plaintiff's claims were barred by the Dead Man's Statute[1] and the Statute of Frauds. The third reason involved Defendants negating an essential element of Plaintiff's contractual claim which required her to establish with reasonable definiteness all of the contract's essential elements. *See Jamestowne on Signal, Inc., supra.* The final reason the Trial Court concluded summary judgment was appropriate was its conclusion that there was insufficient relevant and admissible evidence for Plaintiff to carry her burden of proof.

In order for this Court to reverse the granting of summary judgment to Defendants, Plaintiff must show that *none* of these four reasons formed an appropriate basis upon which to grant summary judgment. Plaintiff challenges on appeal only the fourth reason and claims the "record is clear that there was some agreement between the parties" and it "is unfathomable that a contract did not exist between these parties." The main problem with this argument is that the Trial Court never held there was not some sort of an agreement between Plaintiff's husband and H.Y. Woodson. In fact, Mrs. Woodson readily admitted that there was some such agreement. Plaintiff's argument on appeal completely ignores the other conclusions of the Trial Court that: (1) the Dead Man's Statute precluded the admission of evidence pertaining to the agreement; (2) the agreement as a whole is unenforceable under the Statute of Frauds; and (3) Defendants had negated an essential element of Plaintiff's claim which required her to establish all of the essential elements of the agreement.

There is nothing in the record showing that Plaintiff ever argued to the Trial Court that the Dead Man's Statute did not preclude the admission of relevant evidence pertaining to the agreement, that the Statute of Frauds did not render the agreement unenforceable or that any exception to the Statute of Frauds applied, or that she indeed could establish all of the essential elements of the agreement with reasonable definiteness. Plaintiff never filed any response to the motions to dismiss or the motion for summary judgment. In her brief on appeal, Plaintiff neither cites nor so much as mentions the Dead Man's Statute or the Statute of Frauds. Accordingly, we affirm the judgment of the Trial Court.

Even though we affirm the granting of summary judgment to Defendants, this does not necessarily mean that Plaintiff is not entitled to some sort of an accounting given the fact that she has been making payments pursuant to an admitted agreement of some sort, even if that agreement was unenforceable for various reasons. Under these circumstances Plaintiff should be able to recoup the cost of any improvements to the property as well as the amount of the payments to the extent these improvements/payments exceeded the fair market rental value of the house and

---

[1] The Dead Man's Statute was originally enacted during the 1869-1870 legislative session. The current version of this statute is found at Tenn. Code Ann. § 24-1-203 and provides: "In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors."

land.  As set forth previously, Plaintiff made payments in the amount of $200 per month.  In September of 2002, Defendants filed a second set of requests for admissions asking Plaintiff to admit that the monthly fair market rental value of the residence and premises was $200 from October 1, 1990 to October 1, 1994; $225 from October 1, 1994 to October 1, 1998; and $250 from October 1, 1998 to October 1, 2002.  These Requests for Admission were filed almost eight months before the first hearing on May 5, 2003.  Pursuant to Tenn. R. Civ. P. 36.01, the requests for admissions were deemed "admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney …."  The record contains no response by Plaintiff to these requests for admissions.  Therefore, they are deemed admitted, and we can readily conclude that the amount of the payments did not exceed the fair market rental value of the house and land.  Unfortunately, we do not know whether any improvements were made to the house and land over the years because this never was presented as an issue to the Trial Court.  Therefore, we affirm the Trial Court's granting of summary judgment to Defendants with the modification that the matter is remanded for the limited purpose of determining whether any improvements were made to the house and land such that Plaintiff would be entitled to a recovery for these improvements.

Exercising our discretion, we decline to hold that Plaintiff's appeal is frivolous or award any damages.

## Conclusion

The judgment of the Trial Court is affirmed as modified, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below.  Costs on appeal are assessed against the Appellant, Helen Broyles, and her surety.

_____
D. MICHAEL SWINEY, JUDGE

-11-