# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### December 13, 2012 Session

## MARY KRUGER, ET AL. v. THE STATE OF TENNESSEE, ET AL.

### Direct Appeal from the Circuit Court for Dyer County
### No. 2011-CV-58      William B. Acree, Judge

### No. W2012-00229-COA-R3-CV - Filed February 28, 2013

Diane Benson and the Northwest Tennessee Shooting Sports Association filed requests for variances to devote property to a Use Permitted on Appeal within a Forestry-Agricultural-Residential-District in Dyersburg.  Mrs. Benson's request was tabled, but the NTSSA's request was ultimately granted.  Mrs. Benson, along with two others, filed a petition for writ of certiorari and for declaratory judgment.  Appellees filed motions to dismiss, which the trial court granted.  We affirm the trial court's dismissal of the declaratory judgment action and we affirm the trial court's dismissal of Mary Kruger and Kurt Kruger's petition for writ of certiorari.  However, we reverse the trial court's grant of summary judgment as to Mrs. Benson's claim that the BZA acted illegally, arbitrarily or capriciously, and the case is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and HOLLY M. KIRBY, J., separately concurred in part and dissented in part.

Robert A. McLean, Allison Kay Moody, Memphis, Tennessee, for the appellants, Mary Kruger, Kurt Kruger, and Diane Benson

Robert E. Cooper, Jr. Attorney General and Reporter, William E. Young, Solicitor General, Adam Futrell, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee

J. Michael Gauldin, Dyersburg, TN, for appellee, Dyer County Board of Zoning Appeals

Gregory G. Fletcher, Matthew G. White, Memphis, TN, for appellee, The Northwest Tennessee Shooting Sports Association

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

The "Dyer County Zoning Resolution" ("Resolution") governs the permissible uses of land lying within "Forestry-Agricultural-Residential-Districts" ("FAR Districts") in Dyer County.[1] The Resolution, administered by the Board of Zoning Appeals ("BZA"), classifies the permissible uses of land lying within FAR Districts into two categories: (1) Uses Permitted;[2] and (2) Uses Permitted on Appeal. Apparently, a party who wishes to devote property to a Use Permitted on Appeal must apply for a variance.[3]

On April 1, 2011, Diane Benson applied for a variance to operate a "Daycare Center" on her property located at 3510 Beaver Road in Dyersburg. That same day, the Northwest Tennessee Shooting Sports Association ("NTSSA") also applied for a variance to operate an outdoor shooting range on property located at 3570 Beaver Road in Dyersburg, which it claimed to lease.

A BZA meeting was scheduled for April 12, 2011. Public notice of the meeting was given which specifically listed as agenda items the variance requests of Mrs. Benson and the NTSAA. At the meeting, Mrs. Benson's variance request was considered. According to the BZA minutes,

> Mrs. Benson acknowledged that she had not contacted the Tennessee Department of Human Services or reviewed the state licensing requirements

---

[1]The Resolution states that "[t]he [FAR District] is established to allow for a minimal amount of land regulations within an area to be used primarily for agriculture, forestry and low density residential development. The principal intent of the FAR District will be to maintain the rural character of Dyer County. Public water and sewer facilities are not available in these areas, thus, requiring, for health reasons, low-density development."

[2]The following uses are permitted: "single family and two family residential buildings residential buildings and customary buildings; mobile homes on individual lots; small roadside stands for the sale of farm produce raised on the same property; advertising signs."

[3]Only two chapters of the Resolution are included in the record on appeal: Chapter 4 entitled "Provisions Governing FAR Districts" and Chapter 11's "Definitions." The procedure for requesting a variance is not included; however, two "Application[s] for Relief by the Appeals Board Under the Zoning Ordinance of Dyer County Tennessee" are included. The applications ask the applicant to identify his or her interest in the property as "Owner, Less[e]e, Prospective Purchaser, Option Holder, or Other" and to describe the nature of the variance requested. However, the applications are not exclusive to variances within FAR Districts; instead, they apparently apply to all zoning reclassification requests.

for operation of a day care center, but stated she thought asking for a use permitted on appeal from the county was the first place to begin. She stated that she wanted to start with 5 children, [that she] did not know whether she would have any employees and [and that she] would keep any child and all hours. Mrs. Benson stated that she was currently employed full time outside of the home but [that she] had made her supervisor aware of her plans.

A BZA member explained to Mrs. Benson that operation of a "Day Care Center" involved caring for 12 or more children, and that under the county regulations, only fifteen percent of her 1,680 square foot home could be devoted to such. The BZA member further explained that a "Family Day Care Home" involved caring for 5 to 7 children and that "care for 4 or fewer children is generally considered by DHS as 'unregulated child care[,]' meaning no state license is required." The BZA member then "recommended that 'unregulated child care' or care of 4 or fewer children be considered by the county as an incidental use not requiring the approval of the board, but that it would become a separate use requiring approval of the board if care is provided for 5 or more children."

At the hearing, Mrs. Benson then amended her request from a Day Care Center (12+ children) to a Family Day Care Home (5-7 children). Mrs. Benson was asked when she intended to begin operation of her business, to which "she said that she wanted to get started in about a year or so." Mrs. Benson's variance request was tabled to allow Mrs. Benson to obtain "her license and approval from the Tennessee Department of Human Services[.]"

The BZA then considered the NTSSA's variance request. According to the BZA minutes, the NTSSA submitted numerous documents to the board in support of its request including:[4]

(a) boundary line survey of the entire property prepared by Lucile D. Smith, registered land surveyor, evidencing that the subject property consists of 62.17 acres and identifying adjacent property owners; (b) a site plan prepared by Carl F. House, Jr., professional engineer, with Forcum Lannom Contractors, LLC, depicting parking areas, firing area layout, the proposed berms, fencing and buffering specifications, shooting range sign, proposed structures, utility easements, sediment pond and basin, with the rear berms at least 20 feet in height and side berms at least 8 feet in height and 4 feet in width; (c) certification of Carl F. House, Jr., professional engineer, that the proposed berms are adequate for the type of firearms and ammunition to be used at the range; (d) erosion control plan details prepared by Carl F. House, Jr.

---

[4]These documents are part of the administrative record, which is included in the appellate record.

professional engineer; (e) noise survey dated March 4, 2011, prepared by Dr. Ron Read, CIH, evidencing the dBA of 67-68 at the nearest driveway, prior to installation of noise buffering measures; (f) summary of existing and proposed utilities; (g) floor plan; (h) safety plan; (I) liability insurance; and (j) contour map, depicting an elevation of 282 feet above sea level at the entrance, 270 feet at the firing lines and 265 feet at the southern boundary.

According to the BZA minutes, "[a] number of residents from the Viar community were present at the meeting." "Mrs. Benson stated that she believed the noise level would be a nuisance because the more guns firing the louder it would be and the noise would go on for a longer time." Appellant Kurt Kruger, who is allegedly a "resident and/or landowner[] of the Viar Community[,]" "expressed concern regarding the hours of operation and the need for more Viar community representation on the board of the shooting association." At the request of Mrs. Benson's husband, who "spoke at length in opposition to the range[,]" a copy of the lease agreement ("Lease") between the NTSSA and the State of Tennessee pertaining to the would-be shooting range property was produced during the meeting. Attorney Matt Willis[5] expressed his opinion that the lease between the NTSSA and the State had automatically terminated due to the property's alleged non-use as a shooting range for a continuous twelve-month period.[6] The NTSSA's variance request was tabled "pending confirmation from the state regarding the status of the lease," and the meeting was adjourned.

Following notice by publication, a second BZA hearing was held on April 21, 2011.[7] At the hearing, the NTSSA's attorney presented a letter from Alan Peterson, Region I Manager for the Tennessee Wildlife Resources Agency, in which Mr. Peterson stated, "I have been assured the lease is still in effect, and has not, at any time been cancelled or

_____

[5]Appellants' brief states that Mr. Willis represented Appellants at the BZA hearing. It appears he no longer represents them.

[6]The Lease, beginning July 1, 2007 and ending on June 30, 2022, provides:
     The premises hereby leased shall be used only for the following purposes:
     Establishment of a shooting range for public and scholastic shooting sports, and as a training facility for law-enforcement and public safety agencies.
     In the event that said premises are not used for said purpose at any time during the lease term for a continuous twelve (12) month period, this lease shall be automatically cancelled and the leased premises shall revert to the State without the necessity of any re-entry or retaking on its part.

[7]The notice stated in relevant part "The Northwest T[N] Shooting Sports Association requested a called meeting to present their variance request for a use permitted on appeal to operate an outdoor shooting range on property located at 3570 Beaver Road. This meeting is open to the public."

nullified." Upon reading the letter, "the board was satisfied that the state was aware of the proposed use and that the lease for this property was still in effect and ha[d] not been cancelled or nullified." Accordingly, the BZA unanimously approved the NTSSA's request to locate an outdoor shooting range on the property as a use permitted on appeal.

On June 17, 2011, Mary Kruger, Kurt Kruger and Diane Benson ("Appellants") filed a "Petition for Writ of Certiorari and for Declaratory Judgment" ("Petition") in the circuit court against The State of Tennessee, the Dyer County Commission, the BZA, and the NTSSA. The Petition stated that "[t]he Petitioners are all residents and/or landowners of the Viar Community and will each individually be adversely affected by the proposed shooting range, if and when it becomes operational." The Petition further alleged, in its "Factual Basis" section, that the proposed shooting range property had never been used as a shooting range, and therefore, pursuant to the Lease between the State and the NTSSA, that the Lease had been automatically cancelled and the property had reverted back to the State. The Petition claimed that the TWRA, which had supplied the Lease-validity letter at the second BZA hearing, "lack[ed] legal authority to bind the state or other agencies who are signatories to the lease."[8]

As further alleged "facts," the Petition claimed that "[o]n April 18, 2011 [between the two BZA hearings], Diane Benson applied for and received a business license to operate The Little Beaver Daycare." Appellants claimed that "The Little Beaver Daycare was operational prior to April 21, 2011[,]" and that it was located within one thousand yards of the proposed shooting range location.[9] The Petition alleged that the Board had refused to receive public comment at the second BZA hearing on April 21, 2011, which "resulted in concerned citizens being unable to advise the Board of the ongoing Day Care located within one thousand yards of 3570 Beaver Rd., Dyersburg, Tennessee."

In the Petition, Appellants argued that the decision of the BZA was arbitrary and capricious because it:

---

[8]On behalf of the State, the Lease was executed by M. D. Goetz, Jr., then-Commissioner of Finance and Administration with "approval" by Robert E. Cooper, Jr., Attorney General and then-Governor, Phil Bredesen.

[9]The Resolution provides that "[t]he base of the berm of any outdoor shooting range shall be a minimum of one thousand yards from the boundary of any . . . nursery school as defined by this Zoning Resolution." The Petition states "The Little Beaver Daycare is located within one thousand yards of 3510 Beaver Rd., Dyersburg, Tennessee" which is Mrs. Benson's address. However, at another point in the Petition, Appellants argued that the BZA had "ignore[d] the existence of an operating nursery school within one thousand yards of 3570 Beaver Rd[.], Dyersburg[,] Tennessee[,]" the address of the proposed shooting range site.

-5-

a. Ignore[d] the existence of an operating nursery school within one thousand yards of 3570 Beaver Rd[.], Dyersburg[,] Tennessee. . . .

b. Disallowed public comment prior to final award of variance, rendering it impossible for the board to be properly advised of existing impediments to the grant of said variance.

c. Granted a variance for the use of property to which the Grantee had no legal access, the lease upon which said access is based being invalid on its face.

The Appellants further argued that the BZA had exceeded its jurisdiction in granting the NTSSA a variance because:

a. The grantee had no legal right of access to said property, the lease upon which said access is claimed being invalid upon its face.

b. The Board has no legal authority to authorize the NTSSA to use of the property at 3570 Beaver Rd. Dyersburg, Tennessee as a shooting range when the NTSSA has no legal access or right to the property.

Finally, in their declaratory judgment count, Appellants sought a declaration that the Lease between the State and the NTSSA was "invalid, null and void."[10] Appellants claimed that the property had never been used as a shooting range, and therefore, pursuant to the use-condition set forth in the Lease, that the Lease had automatically been cancelled and the property had reverted to the State. Upon termination, Appellants claimed, "the NTSSA had no legal right of access of use of the property . . . for any purpose, including, but not limited to, the establishment of a shooting range."

In response, the State filed a motion to dismiss Appellant's declaratory judgment action pursuant to Tennessee Rule of Civil Procedure 12.02(1) and 12.02(6). In its supporting memorandum, the State argued that it retained sovereign immunity, which it had not waived, and furthermore, that Appellants lacked standing to challenge the Lease, as they were "strangers" to it.

Thereafter, the Dyer County Commission and the Dyer County Board of Zoning Appeals (collectively, "Dyer County") filed a joint "Motion to Dismiss" Appellants' Petition pursuant to Tennessee Rule of Civil Procedure 12.02(6). Dyer County first argued that Appellants lacked standing to pursue their declaratory judgment action as, it claimed, they

---

[10]A copy of the Lease was attached to Appellants' Petition.

had no "real interest" in the Lease. Alternatively, Dyer County argued that even if Appellants had standing to bring a declaratory judgment action regarding the Lease, that Appellants had "fail[ed] to plead or cite any provision under [the Resolution] requiring NTSSA to even have a lease in the first place."

Dyer County then argued that Appellants also lacked standing to bring the Petition for Writ of Certiorari, claiming that they had "fail[ed] to show any 'distinct and palpable injury' related to the grant of the variance." Dyer County claimed that Mrs. Benson, in her Petition, had sought to provide care for four or fewer children,[11] and it claimed that

> [n]o action by the Board precludes the Petitioners from providing unregulated child care or obtaining permission from the Board in the future to operate a family day care home, day care center, group day care home, nursery school or any other use permitted on appeal . . . . In short, the action taken by the Board on April 21, 2011 does not impact the Petitioners' right to use their property in any way.

Dyer County further argued that even if Appellants had standing to bring the Petition for Writ of Certiorari, that the Petition demonstrated no facts entitling them to relief. Specifically, Dyer County again asserted that the Petition had alleged only that Mrs. Benson was caring for four or fewer children. Dyer County then claimed that if The Little Beaver Daycare was only providing care to four or fewer children, that it did not qualify as a "nursery school," and therefore, that the shooting range distance requirements had not been invoked.

Alternatively, Dyer County contended that if the Petition was interpreted as asserting that The Little Beaver Daycare cared for five or more children, that both a license from the Tennessee Department of Human Services and a variance from the BZA would be required, neither of which was attached to the Petition. Finally, the Dyer County Commission argued that it was not a proper party to the litigation as the only allegation against it was that it had created the BZA.[12]

---

[11]Apparently Dyer County inferred that because Mrs. Benson had not been granted a variance, that she was caring for four or less children. However, Appellants' Petition states only that "[o]n April 12, 2011 Diane Benson was informed that no variance was necessary for the use of her home as a day care so long as she cared for four (4) or less children there[,]" and that "The Little Beaver Daycare was operational prior to April 21, 2011." Despite Dyer County's presumption otherwise, we find no indication in the Petition as to the number of children for which Mrs. Benson was providing care.

[12]In response, Appellants conceded that the Dyer County Commission should be dismissed as an improper party. The commission was ultimately dismissed in the trial court's "Order Granting Defendants'
(continued...)

The NTSSA then filed its "Motion to Dismiss" both Appellants' declaratory judgment action and their Petition for Writ of Certiorari pursuant to Tennessee Rule of Civil Procedure 12.02(6).[13] As did Dyer County, the NTSSA argued that Appellants lacked standing due to their failure to allege facts sufficient to demonstrate a "distinct and palpable" injury stemming from the grant of the variance. The NTSSA argued that "Petitioners' allegations show on their face . . . that none of the Petitioners operates a 'Nursery School' . . . and that they are not entitled to the protection of the shooting range distance restrictions contained in the [] Resolution."[14]

Appellants responded to the motions to dismiss filed by the State, Dyer County, and the NTSSA (collectively "Appellees"). Essentially, Appellants claimed that they possessed standing to bring a declaratory judgment petition and to bring a Petition for Writ of Certiorari challenging the variance because "[t]hey are residents or landowners in the immediate vicinity o[r] location of the proposed shooting range" who will be "adversely affected if and when the shooting range becomes operational." They further claimed that their Petition was facially sufficient to survive a Rule 12 motion to dismiss.

After hearing arguments on the parties' respective motions, the circuit court, on December 12, 2011, entered an "Order Granting Defendants' Motions to Dismiss." Although the court acknowledged that Appellees had moved for dismissal pursuant to Tennessee Rule of Civil Procedure 12, it stated in a footnote that "[t]he record of proceedings before the Board [of Zoning Appeals] ha[d] been filed into the record and ha[d] been considered by the Court."[15] The court then proceeded, apparently *sua sponte*, to dispose of the Petition for Writ of Certiorari on its merits, finding:

---

[12](...continued)
Motions to Dismiss."

[13]The NTSSA's "Motion to Dismiss" moved the court "to dismiss the *declaratory judgment action*" brought by the Petitioners against NTSSA. (emphasis added). However, in its supporting memorandum, the NTSSA additionally argued for dismissal of the Petition for Writ of Certiorari. In their response to NTSSA's Motion to Dismiss, Appellants argue that because the body of the NTSSA's motion to dismiss argued only for dismissal of the declaratory judgment action, that their subsequent memorandum request for dismissal of the Petition for Writ of Certiorari was not properly raised to the trial court. This waiver argument does not seem to have been pursued on appeal, and in any event, in light of Dyer County's request for the dismissal of both the declaratory judgment action and the Petition for Writ of Certiorari, we find the issue moot.

[14]The NTSSA relied upon and incorporated the memoranda of both the State and Dyer County.

[15]The court's footnote further stated that "The Court considers the record of proceedings to be a part of the pleadings which can be considered in a Rule 12 motion."

The Court disagrees with the plaintiffs' contention that the decision of the Board of Zoning was illegal, arbitrary, or capricious. First, the record establishes the business of the plaintiff, Benson, was not a nursery school, but a day care which is not subject to the regulations. Second, the record reflects that there was substantial public comment upon the variance including comment by the plaintiffs' attorney. Third, the record is insufficient to show that the lease was invalid on its face, and, if it were, the plaintiffs have no standing to challenge said lease. Finally, the record reflects the Board acted in accordance with law, and the evidence supports its decision.

With regard to Appellants' declaratory judgment action, the court found that Appellants lacked standing to bring such because their Petition had failed to demonstrate (1) a distinct and palpable injury, (2) a causal connection between the claimed injury and the challenged conduct, or (3) that the injury was capable of being redressed by a favorable decision of the court.[16] Furthermore, the court rejected Appellants' argument that the Lease had terminated, stating that "the evidence before the Board was that both the State and the [NTSSA] represented that the lease was valid" and that "[w]hether . . . the lease was amended or whether the State simply chose to disregard [the termination provision] [wa]s not in the record; nevertheless, it [wa]s immaterial if the parties to the lease agreed that it was binding upon them." Accordingly, the court granted Appellees' motions to dismiss with prejudice.

## II. ISSUES PRESENTED

Appellants present the following issues for review, as summarized:

1. Whether the BZA exceeded its authority or acted capriciously, arbitrarily or illegally in granting NTSSA a permit variance for an outdoor shooting range;

2. Whether Appellants have standing to bring a declaratory judgment action challenging the validity of the Lease between NTSSA and the State; and

3. Whether the trial court erred in granting Appellees' motions to dismiss the Petition for Writ of Certiorari and Declaratory Judgment.

---

[16]The court specifically noted that it found it unnecessary to address the State's sovereign immunity defense.

Additionally, the BZA presents the following issue:

1.      Whether the trial court erred in holding that the Dyer County Zoning Resolution does not require an applicant seeking a variance to have a written lease.[17]

For the following reasons, we affirm the trial court's dismissal of the declaratory judgment action and we affirm the trial court's dismissal of Mary Kruger and Kurt Kruger's petition for writ of certiorari. However, we reverse the trial court's grant of summary judgment as to Mrs. Benson's claim that the BZA acted illegally, arbitrarily or capriciously, and the case is remanded for further proceedings consistent with this opinion.

## III.    STANDARD OF REVIEW

As a preliminary matter, we must first consider whether the trial court's dismissal of Appellants' claims should be reviewed as a grant of a motion to dismiss pursuant to Rule 12 or as a grant of summary judgment pursuant to Rule 56. Tennessee Rule of Civil Procedure 12.02 provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

As noted above, the trial court, in deciding this case, openly considered the administrative record. The trial court stated that it considered such proceedings "to be a part of the pleadings" which could properly be considered on a Rule 12 motion. Additionally, the parties' briefs to this Court recite the appellate standard for reviewing a *motion to dismiss*,[18] and at oral argument, the parties indicated that Appellees' motions to dismiss had not been converted to motions for summary judgment.

---

[17]Our review of the Order Granting Defendants' Motions to Dismiss reveals no such finding by the circuit court. Thus, we construe the BZA's argument as "Whether the Resolution requires an applicant seeking a variance to possess a valid lease."

[18]Confusingly, Appellants' brief recites both the standard for reviewing administrative decisions and the standard for reviewing a grant of a motion to dismiss.

Our determination of the type of relief granted by the trial court is confounded by the multiple motions to dismiss filed in this case and by the lack of clarity within these motions. Specifically, the parties mingle their arguments related to dismissal of the declaratory judgment action and the petition for writ of certiorari, and, at times, they fail to reference the subsection of Tennessee Rule of Civil Procedure 12 relied upon.

As best we can discern, the parties' motions sought the following relief: Dyer County sought relief pursuant to Rule 12.02(6) as to both the declaratory judgment action and the petition for writ of certiorari; the NTSSA sought relief pursuant to Rule 12.02(1)[19] as to the petition for writ of certiorari and the declaratory judgment action, and it sought Rule 12.02(6) relief as to the petition for writ of certiorari; the State sought relief pursuant to 12.02(1) as to the declaratory judgment action, and it sought relief pursuant to Rule 12.02(6) as to the declaratory judgment action.

Again, as best we can discern, the trial court intended to grant Rule 12.02(6) relief as to both the declaratory judgment action and the petition for writ of certiorari, and it intended to grant Rule 12.02(1) relief as to the declaratory judgment action *only*,[20] concluding that Appellants lacked standing to bring such. However, on appeal, Appellees contend that, in addition to lacking standing to bring the declaratory judgment action, that Appellants lack standing to bring a petition for writ of certiorari.

We review the standing issues *de novo*, without a presumption of correctness.[21] However, because the administrative record was considered, we find that Appellees' claims for dismissal of Appellants' declaratory judgment action and their petition for writ of certiorari pursuant to Rule 12.02(6) were converted to claims for summary judgment. Thus, we "cannot 'review this appeal using the standard of review normally associated with common-law writs of certiorari because the issues before us are based upon [the grant of a

_____

[19]A Rule 12.02(1) motion claims that the court "lack[s] [] jurisdiction over the subject matter[.]" Here, the NTSSA's 12.02(1) argument was based upon Appellants' lack of standing, and the State's 12.02(1) argument was based upon sovereign immunity.

[20]In its brief, the BZA states that the trial court "properly held that [Appellants] have no standing to maintain an action for certiorari." Our determination that the trial court did not dismiss the certiorari petition based upon a lack of standing is of no consequence, however, as we review the issue *de novo*.

[21]"[M]otions to dismiss on jurisdictional grounds are not converted to summary judgment motions when material factual disputes arise." *Wilson v. Sentence Info. Servs.*, No. M1998-00939-COA-R3-CV, 2001 WL 422966, at *4 (Tenn. Ct. App. Apr. 26, 2001) (citing *Chenault v. Walker*, 36 S.W.3d 45, 55 (Tenn. 2001)). The determination of whether subject matter jurisdiction exists is a question of law. *See Tenn. Dept. of Safety ex rel. Harmon v. Bryant*, No. E2011-01295-COA-R3-CV, 2012 WL 3289643, at *2-3 (Tenn. Ct. App. Aug. 14, 2012) (citation omitted).

motion] for summary judgment.'" ***Levitt v. City of Oak Ridge***, No. E2011-02732-COA-R3-CV, 2012 WL 5328248, at \*8 (Tenn. Ct. App. Oct. 30, 2012) (quoting *Cunningham v. City of Chattanooga*, No. E2008-02223-COA-R3-CV, 2009 WL 2922789, at \*4 (Tenn. Ct. App. Sept. 11, 2009)).

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." ***Green v. Green****,* 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)).

"A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 9 (Tenn. 2008) (footnote omitted).[22] "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." ***Id.*** at 8. If the moving party makes a properly supported motion, the burden of production shifts to the nonmoving party to establish the existence of a genuine issue of material fact. ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993).

The resolution of a motion for summary judgment is a matter of law, which we review *de novo* with no presumption of correctness. ***Martin,*** 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Id.*** (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)).

---

[22]Recently, the Tennessee General Assembly enacted a law that legislatively reversed the Tennessee Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. However, the statute applies only to cases filed on or after July 1, 2011. Thus, in this appeal, we apply the summary judgment standard set forth in *Hannan*.

## IV. DISCUSSION

### A. Standing[23]

#### 1. Declaratory Judgment Action

As discussed above, in their Petition, Appellants sought a declaration that the Lease between the State and the NTSSA was "invalid, null and void." Appellants claimed that the property had never been used as a shooting range, and therefore, pursuant to the use-condition set forth in the Lease, that the Lease had automatically been cancelled and the property had reverted to the State. Upon termination, Appellants claimed, "the NTSSA had no legal right of access of use of the property . . . for any purpose, including, but not limited to, the establishment of a shooting range."

Declaratory judgment actions are governed by Tennessee Code Annotated section 29-14-101 et seq. *Williams v. Hirsch*, No. M2010-02407-COA-R9-CV, 2011 WL 303257, at *2 (Tenn. Ct. App. Jan. 25, 2011) *perm. app. denied* (Tenn. May 26, 2011). Tennessee Code Annotated section 29-14-103 provides that "[a]ny person interested under a . . . written contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." "While the declaratory judgment statutes are to be construed liberally, Tenn. Code Ann. § 29-14-113, declaratory relief is available only to parties who have a real interest in the litigation." *Williams*, 2011 WL 303257, at *2 (citing *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 512 (Tenn. 1974); *Dobbs v. Guenther*, 846 S.W.2d 270, 275 (Tenn. Ct. App. 1992)). "When analyzing standing, the court's primary focus is on the position of the party rather than the merits of the action." *Laurel Valley Property Owners Ass'n, Inc. v. Hollingsworth*, No. E2003-01936-COA-R3-CV, 2004 WL 1459404, at *10 (Tenn. Ct. App. June 29, 2004) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,* Inc., 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982); *Metro. Air Research Testing Auth., Inc. v. Metro. Gov't of Nashville & Davidson County*, 842 S.W.2d 611, 615 (Tenn. Ct. App. 1992)).

The trial court dismissed the declaratory judgment action finding that (1) sufficient evidence of the Lease's validity was presented, and that (2) Appellants lacked standing to challenge the Lease. On appeal, the BZA argues that the Resolution does not require a

---

[23]As stated above, we will utilize the motion to dismiss standard of review in determining whether the "Petition for Writ of Certiorari and for Declaratory Judgment" should be dismissed on the jurisdictional ground of standing. *See Wilson*, 2001 WL 422966, at *4.

written lease, and therefore, that a determination of lease validity is of no effect. Furthermore, Appellees contend that Appellants lack a "real interest" in a Lease-validity determination because they "have no legal interest in the [p]roperty and are not parties to the lease."

Chapter 4 of the Resolution, titled "Provisions Governing FAR Districts," provides for the operation of an outdoor shooting range, as a Use Permitted on Appeal, subject to the following regulations:

(k) Outdoor shooting range, which means any outdoor shooting range, outdoor firing range, or other open property on which a person may discharge a firearm for a fee or other remuneration but does not include a deer lease or other similar leases of property for the purposes of hunting. Such ranges must meet the minimum standards provided below. An outdoor shooting range may be developed on the same property as an outdoor archery range, provided that the minimum standards established herein for each type of development are met. Not that these are minimum standards and should not discourage a developer or owner of an outdoor shooting range or joint shooting/archery range from protecting the site by more stringent or professionally accepted safety measures based on insurance or liability concerns. A mixed use range involving archery and firearms is permissible, provided the property shall meet the cumulative lot area and safety requirements of both ranges and receive the approval of the Board of Zoning Appeals.

(1) Description of firearms and ammunition permitted on the proposed outdoor shooting ranges

(2) Such facilities shall be located on a tract with a minimum of 20 acres

(3) The base of the berm of any outdoor shooting range shall be a minimum of one thousand yards from the boundary of any R-1 or R-2 zoned district, school, or nursery school as defined by this Zoning Resolution.

(4) A berm shall be present at least twenty (20') feet in height at the rear of the range, at least eight (8['] feet in height at the sides of the range, and four (4') feet wide at the tip of each berm. In addition, such facilities shall have a minimum side setback of one hundred (100') feet from the property line to the exterior base of each berm. Such facilities shall have a minimum rear setback of two hundred (200') feet from the property line to the exterior base of each berm. Ranges devoted exclusively to the discharge of shotguns shall be

-14-

excluded from this requirement.

(5) Any man-made berm must be designed and certified, by an engineer licensed by the State of Tennessee, as adequate for the type of firearms and ammunition used at the proposed range.

(6) The front of the property shall be fenced and display warning signs of the activity within the outdoor shooting range.

(7) The hours of operation shall be limited to daylight hours.

(8) Decibel levels measured at the nearest residence shall be limited during hours of operation to eight-(80) dB(A).

(9) The developer/owner shall provide (1) parking space per firing point or firing lane.

(10) A site plan shall be required and include:

> I. Survey of the entire property, drawn to scale by a licensed surveyor
>
> ii. Adjacent property owner
>
> iii. Any existing structures within 1,500 feet of the proposed outdoor shooting range
>
> iv. Topographic contours in 5-ft intervals. Ranges devoted exclusively to the discharge of shotguns shall be excluded from this requirement.
>
> v. Existing and proposed utilities
>
> vi. All structures and their use
>
> vii. Parking areas
>
> viii Firing area layout
>
> ix. All proposed berms, fencing, and buffering specifications
>
> x. Any other more restrictive standards

(11) In addition to the site plan, the developer/owner shall submit a safety plan. The Board of Zoning Appeals may require additional fencing, buffering, baffles, or may deny the request if the site plan does not or cannot meet the above mentioned purposes, standards and requirements, or if other significant health and safety issues are present.

In contrast to other "Uses Permitted on Appeal" which expressly require ownership by the principals engaged in operation–for example, the uses of "Temporary dwellings" and

"Bed and Breakfast Operation"–the Resolution contains no requirement that an outdoor shooting range variance seeker demonstrate his interest in the subject property. Appellees are not parties to the Lease, they are not third-party beneficiaries thereunder, and, in the absence of a lease requirement in the Resolution, their "injury is [not] apt to be redressed" by a determination of Lease validity. *Laurel Valley*, 2004 WL 1459494, at *10 (holding that a non-property owner lacked standing to seek declaratory relief to preclude another's road access). Accordingly, we find that Appellants lacked standing to bring a declaratory judgment action, and, therefore, the action was properly dismissed.

### 2. Petition for Writ of Certiorari

We next address whether Appellants possessed standing to bring their petition for writ of certiorari. "In order to have standing to file a petition for common-law writ of certiorari, the party filing the petition must demonstrate that it is 'aggrieved' by the decision sought to be reviewed." *Wood v. Metro. Nashville & Davidson County Gov't*, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 27-9-101). "For the purposes of Tenn. Code Ann. § 27-9-101, to be 'aggrieved,' a party must be able to show a special interest in the agency's final decision or that it is subject to a special injury not common to the public generally." *Id.* (citing *Buford v. State Bd. of Elections*, 206 Tenn. 480, 484, 334 S.W.2d 726, 728 (1960); *League Cent. Credit Union v. Mottern*, 660 S.W.2d 787, 791-92 (Tenn. Ct. App. 1983)).

On appeal, Appellees contend that Appellants lacked standing to bring a petition for writ of certiorari because they demonstrated no "special injury." Although Appellees Mary Kruger, Kurt Kruger and Diane Benson collectively filed the Petition, we find it appropriate to separately consider whether Mrs. Benson and the Krugers possessed standing to seek a writ of certiorari.

### a. The Krugers

The Petition states that Appellees "are all residents and/or landowners of the Viar Community and will each individually be adversely affected by the proposed shooting range, if and when it becomes operational." The Krugers' address is not identified in the Petition or elsewhere in the record and their response to Dyer County's Motion to Dismiss indicates only that Appellants "are residents or landowners in the immediate vicinity of [the] location

of the proposed shooting range."[24]  Moreover, the record fails to offer any explanation or support for their claim that they will be "adversely affected" by operation of the range.[25] Because the Krugers have failed to demonstrated that they are "aggrieved" within the meaning of section 27-9-101, we find that the petition for writ of certiorari was properly dismissed as to them.

### b. Mrs. Benson

Unlike the Krugers, the record identifies Mrs. Benson's address as 3510 Beaver Road, and the Petition claims that such property is within 1,000 yards of the proposed shooting range site at 3570 Beaver Road.  Additionally, the Petition states that between the two BZA hearings, Mrs. Benson "applied for and received a business license to operate The Little Beaver Daycare[,]" that the facility become operational prior to the second hearing, and that facility is a "nursery school" subject to the shooting range distance requirements.  We are satisfied that Mrs. Benson has successfully demonstrated that she is subject to a special injury which qualifies her as an aggrieved party entitled to petition for a writ of certiorari.  *See* **Tenn. Code Ann. § 27-9-101**.

### B.  *Summary Dismissal of Petition for Writ of Certiorari*

As discussed above, the trial court stated its intention to dismiss Appellees' petition for writ of certiorari for failure to state a claim upon which relief could be granted.  However, the ostensible motions to dismiss were converted into motions for summary judgment based upon the trial court's consideration of the administrative record.

Again, the Petition alleged that the BZA's actions were illegal, arbitrary or capricious because the BZA "ignore[d] the existence of an operating nursery school" within one thousand yards of the proposed shooting range, because it disallowed public comment, and because the Lease between the State and the NTSSA is "invalid on its face."  It further alleged that the BZA had exceeded its jurisdiction in granting the outdoor shooting range

---

[24]As ostensible support for this statement, the response cites paragraph one of Appellants' complaint, which states only that Appellants "are all residents and/or landowners of the Viar Community."

[25]The April 12, 2012 BZA minutes provide only that "Mr. Kruger expressed concern regarding the hours of operation and the need for more Viar community representation on the board of the shooting association."

variance because the Lease is "invalid upon its face[,]" leaving the NTSSA with "no legal access or right to the property."

We find that Appellees have affirmatively negated an essential element of Appellants' Lease validity claim by demonstrating that a written lease is not required by the Resolution. Thus, the BZA could not have exceeded its jurisdiction in granting a variance without such, and summary judgment was properly granted as to this claim.

The record in this case demonstrates that extensive public comment was allowed at the April 12, 2011 BZA hearing and that the shooting range variance request was tabled to April 21 "pending confirmation from the state regarding the status of the lease[.]" Appellants' brief states that at the April 12 hearing, "[a] number of residents, including Appellants Mrs. Benson and Mr. Kru[]ger, were present at the meeting and provided statements in opposition." However, public comment was not again allowed at the April 21 BZA hearing when the outdoor shooting range variance was ultimately granted. We find that Appellees have not affirmatively demonstrated that the BZA did not erroneously disallow public comment at the second BZA hearing, and therefore summary judgment was improperly granted as to this claim.

Additionally, despite the Appellees' assertions and the trial court's finding that Mrs. Benson's Little Beaver Daycare was caring for four or fewer children, we find the evidence does not support this finding. *See* **Tenn. R. App. 13(d)**. The Petition states that at the first BZA hearing, "Diane Benson was informed that no variance was necessary for the use of her home as a day care so long as she cared for four (4) or less children there[,]" and it states that "The Little Beaver Daycare was operational prior to April 21, 2011." It does not state, however, the number of children being cared for. Therefore, insofar as Appellees argue that Mrs. Benson cannot qualify the Little Beaver Daycare as a "nursery school" subject to the outdoor shooting range distance requirements, we find that a question of fact exists as to whether Mrs. Benson is, in fact, operating a "nursery school," thus precluding summary judgment as to Mrs. Benson's claim that the BZA acted illegally, arbitrarily or capriciously. Summary judgment as to this claim by Mrs. Benson is reversed, and the case is remanded for further proceedings consistent with this opinion.

## V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's dismissal of the declaratory judgment action and we affirm the trial court's dismissal of Mary Kruger and Kurt Kruger's

petition for writ of certiorari.  However, we reverse the trial court's grant of summary judgment as to Mrs. Benson's claim that the BZA acted illegally, arbitrarily or capriciously, and the case is remanded for further proceedings consistent with this opinion.  Costs of this appeal are taxed equally to Appellees The State of Tennessee, Dyer County Tennessee Board of Zoning Appeals, and the Northwest Tennessee Shooting Association, and Appellants Mary Kruger, Kurt Kruger and Diane Benson, and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.
